*382
 
 Robinson, J.
 

 The Fidelity Title
 
 &
 
 Trust Company and Genevieve T. Dempster, executors under the last will and testament of Arthur Dempster, de-"" ceased, and Cynthia R. Sanders filed a complaint against the plaintiff in error, the New York Central Railroad Company, with the Public Utilities Commission of Ohio, asserting ownership of a coal mine known and designated as mine No. 10, located in Muskingum county, Ohio; asserted that there were large and valuable deposits of coal in such mine; that they had expended large sums of money in equipping and rehabilitating such mine, and that such mine is now equipped for successful operation; that the New York Central Railroad Company and its predecessors in title have for more than 25 years last past owned and maintained a switch track 4,400 feet long, leading from its branch line to such coal mine; that for 22 of the 25 years the New York Central Railroad and its predecessors in, ownership adequately served such mine; that for the last 2 years such mine has not been operated; that in May, 1928, complainants resumed operation and demanded, in writing, of the New York Central Railroad Company that it furnish cars for loading and transporting coal to various markets within the state of Ohio; and that the New York Central Railroad refused and still refuses to furnish such cars, in violation of the General Code of Ohio and in violation of a contract between one of the complainants (through whom the other complainants derive title) and a predecessor in title of the New York Central Railroad Company.
 

 The controversy between the complainants and this plaintiff in error grew out of a purpose on the
 
 *383
 
 part of the plaintiff in error to require the complainants to purchase, repair, and maintain a switch track owned by the plaintiff in error, and a purpose upon the part of the complainants to require the plaintiff in error to repair and maintain such switch track according to the terms of an ancient contract relating thereto. But for such controversy it probably would not have been necessary to invoke the jurisdiction of the Public Utilities Commission, for, concededly, the complainants need common carrier service, and the plaintiff in error needs the transportation business. The principal question before the Public Utilities Commission was, and here is, whether, since the determination of the contractual rights and obligations of the parties would probably result in a resumption of service, the Public Utilities Commission had jurisdiction to require service, regardless of the contract, pending the determination by a court of law of the rights of the parties under the .contract; or, because the Public Utilities Commission did not have jurisdiction to determine the contractual rights of the parties, was it, for that reason, divested of the jurisdiction conferred upon it by statute to require service ?
 

 The Public Utilities Commission made a tempor- . ary order:
 

 ‘ ‘ That, without at this time determining the party at whose expense such repairs shall be made, said The New York Central Bailroal Company be, and hereby it is notified, directed and required, forthwith to make the following repairs to the side track serving the mine of the complainants herein in Muskingum county, Ohio, and thereupon to furnish empty cars to said mine upon said track for loading
 
 *384
 
 and, when the same have been loaded, to remove the same for transportation- within the State of Ohio, to wit:
 

 “Bridge No. 1 — renew ground sill and blocking under same east end of trestle, and raise south side of*, track full length of bridge to give proper elevation on curve.
 

 “Bridge No. 2 — renew four posts under middle bent (length six feet), renew twelve ties on deck and raise track south side full length of bridge. Renew switch ties at second switch from main track No. 1162. Renew switch ties at switch No. 1163. Renew switch ties at intersection of tracks and .switches Nos. 1162 and 1163 above tipple. Renew approximately fifty new service ties in vicinity of tipple (principally ábove tipple) and dump one carload of cinders at junction of Nos. 1162 and 1163 switches and raise track at this point. Provide proper drainage for surface water. * * #
 

 “Ordered, that the further consideration of the matters herein at issue be deferred pending a full and final hearing of the proceedings.”
 

 Thereafter the Public Utilities Commission, upon hearing duly had, made the following findings and order:
 

 “That thn complainants herein are the owners and operators of a mine for the production of coal in Section Six, Brush Creek township,- Muskingum county, Ohio, which said mine is in condition to produce and load coal for shipment therefrom to destination points throughout the State of Ohio;
 

 “That the tipple of said mine is located contiguous to a track of the defendant ;
 

 ‘ ‘ That the complainants have bona fide orders for
 
 *385
 
 coal which may be produced and loaded at said mine for shipment via the lines of the defendant;
 

 “That the defendant is failing, neglecting and refusing to place cars upon its said track contiguous to the tipple of said coal mine for loáding and, after such loading, to transport the same therefrom as ordered by the complainants, and
 

 “That it is the duty of the defendant to provide service at said mine, that is, to place empty cars upon said track contiguous to said tipple and, when the said cars are loaded, to remove them therefrom for transportation as directed by the complainants.
 

 “It is, therefore,
 

 “Ordered, That said The New York Central Railroad Company be, and hereby it is notified, directed and required, forthwith upon the service of a copy of this order, to render service to the complainants herein at the aforesáid coal mine located in Section Sis, Brush Creek township, Muskingum county, Ohio.”
 

 The appeal is from this order.
 

 Section 521, General Code, empowers the Public Utilities Commission to enforce reasonable regulations for furnishing cars to shippers, switching, loading, etc. Section 523, General Code, gives to the Public Utilities Commission the same control over private tracks used by common carriers in connection with a railroad for the transportation of freight as it has over the tracks of such railroad. Section 524 provides for a complaint to the Public Utilities Commission that any service of a public utility is inadequate; and Section 527 empowers the Public Utilities Commission, upon finding that a service is inadequate, to make such an order re
 
 *386
 
 specting such service as it shall determine to be reasonable, which shall be observed and followed in the future. Section 535 provides that, if upon investigation the Public Utilities Commission finds that any service is inadequate, it shall, by order, fix a reasonable order to be imposed, observed, and followed in the future.
 

 Jurisdiction over the subject-matter, to wit, adequate service by the public utility, has been conferred upon the Public Utilities Commission by statute. Jurisdiction to determine the rights and obligations of the parties under the contract has not been conferred upon the Public Utilities Commission by statute.
 
 The Zanesville Terminal Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 100 Ohio St., 225, 126 N. E., 56.
 

 The Public Utilities Commission found that the plaintiff in error was not furnishing adequate service ; and, eliminating the question of the contractual rights and obligations of the parties, the record warranted such finding.
 

 The order of the Public Utilities Commission does not attempt to determine the merits of the contentions of the parties to, or who claim under, or are affected by, the contract, and therefore does not determine whether the expense of repair for the switch shall ultimately be paid by the complainants or by the New York Central Railroad Company; nor whether the contract has been performed, forfeited, or is still in force; and, since in any event it is the practice of railroad companies, with a view perhaps to insuring a safe and suitable railway, to themselves take charge of such repairs, it was not necessary for the Public Utilities Commission, before
 
 *387
 
 ordering the service, to determine who should ultimately bear the expense of such repairs, since the jurisdiction of a court may be invoked to determine that question. The contention, therefore, of the plaintiff in error, that the Public Utilities Commission was without jurisdiction to make the order for service in this case, because ultimately the question of the present validity of the contract must be determined in a suit at law, must be denied.
 

 The Public Utilities Commission was confronted with the situation of an existing common carrier railroad owning a spur or switch track extending to the tipple of the complainants; the complainants owning a mine fully equipped and a supply of unmined'coal, desiring service from the common carrier, the common carrier refusing to render such service.
 

 The application for the order was for intrastate service. The Public Utilities Commission of Ohio has jurisdiction’ of intrastate service and over spurs and switches. The fact that the rendering of service by the common carrier may create a liability growing out of -a contract does not operate to deprive such commission of- jurisdiction to require service.
 

 It is suggested that the jurisdiction exercised by the Public Utilities Commission violates the Interstate Commerce Act. Section 1, par. 17, of that act (Title 49, Section 1, par. 17, U. S. Code), provides :
 

 ‘ ‘ That nothing in this chapter shall impair or affect the right of a State, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in
 
 *388
 
 so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this paragraph. ”
 

 Paragraph 22 (Title 49,- Section 1, par. 22, TJ. S. Code) provides:'
 

 “The authority of the Commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation.”
 

 It will be noted that the record does not disclose any order of the Interstate Commerce Commission to have been made with reference to this particular spur or switch.
 

 It is further suggested that the effect of such order constitutes a discrimination in favor of the complainants.
 

 The Public Utilities Commission of Ohio has not determined where the expense of repair shall ultimately be charged, and, until that question is determined adversely to the New York Central Railroad Company, the question of discrimination will not arise; and, when it does, if at,all, it will arise out of a contract antedating any present policy of such company, the federal government, or the Interstate Commerce Commission.
 

 Order affirmed. ■
 

 Marshall, C. J., Day, Allen, Kinkade, Jones and Matthias, JJ., concur.